## Cornelius Wiersema, Defendant in Error, v. Lockwood & Strickland Company, Plaintiff in Error.

### Gen. No. 14,244.

1. TRIAL—*when conduct of counsel ground for reversal.* Conduct of counsel which consists in persisting in bringing to the attention of the jury the irrelevant fact, if fact it was, that the cause

was being defended by an insurance company, is ground for reversal, and this notwithstanding an objection to the offer to prove such alleged fact was sustained by the court; such conduct likewise is so prejudicial that it cannot be cured by instruction.

2. MASTER AND SERVANT—*when instruction upon assumed risk erroneous.* An instruction upon the subject of assumed risk, which tells the jury that a servant assumes only the usual and ordinary risks incident to the employment, is erroneous if it does not in the same connection instruct the jury that a servant also assumes such risks as are obvious and apparent in the particular service.

Action in case for personal injuries. Error to the Municipal Court of Chicago; the Hon. FREEMAN K. BLAKE, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1907. Reversed and remanded. Opinion filed January 16, 1909. Rehearing denied January 26, 1909.

F. J. CANTY and GEORGE PFIRSHING, for plaintiff in error; R. J. FOLONIE, of counsel.

GALLAGHER & MESSNER, for defendant in error.

MR. JUSTICE CHYTRAUS delivered the opinion of the court.

This is an action by defendant in error, Wiersema, for the recovery of damages for a personal injury, against plaintiff in error, Lockwood & Strickland Company. Wiersema was in the employ of the Lockwood & Strickland Company and was hurt in connection with their machinery.

Wiersema recovered a judgment in the Municipal Court for $500 and this writ of error is brought to reverse that judgment.

The proceedings in the court below, as shown by this record, are such that it would be useless to discuss the merits of the case. We are compelled to reverse and remand the case for another trial because of the manner in which counsel for defendant in error brought to the attention of the jury matter irrelevant and prejudicial to the plaintiff in error, and because of error in the instructions to the jury.

It is of vital importance in the administration of justice that cases should be fairly presented to the

jury. It is fundamental that any verdict shown to have its basis in passion or prejudice, or which may have its basis in irrelevant evidence, must be set aside by the trial judge. It is no kindness to the prevailing party to enter a judgment upon such verdict, for it but occasions delay and creates expense to have it reversed by a court of review.

Counsel for Wiersema either suspected or knew that the defendant, Lockwood & Strickland Company, carried insurance in the London Guaranty & Accident Company, whereby defendant would be indemnified or reimbursed for money paid out by reason of any injury to any of the defendant's employes.

If defendant was so protected, that fact could not, under the law, be permitted to either increase or decrease the amount to be recovered by the plaintiff, nor could it be permitted, lawfully, in the slightest degree to affect the question of defendant's liability for the injury to the plaintiff. Furthermore, the Accident Insurance Company neither was nor could then be before the court, having a hearing in respect to the existence or the extent of its liability. Therefore, if the jury increased the amount of the verdict or if the decision of the jury upon the question of liability was influenced favorably to the plaintiff, in the slightest extent, because the Insurance Company stood back of the employer, who was in court making the defense, to reimburse it, then, to that extent, the Insurance Company was deprived of its property without due process of law—without a hearing. Manifestly such result would be not only erroneous but grossly unfair and unjust. The introduction of irrelevant matter of such possible evil tendency should be most scrupulously avoided by counsel and most carefully guarded against by the court.

Upon the trial of this case defendant called Dr. W. O. Rickford, who testified as to the extent of the plaintiff's injuries. It appears that at the time of the injury the doctor had been telephoned by defend-

ant to attend and he did attend plaintiff. Upon cross-examination by counsel for the plaintiff the following occurred:

"Q. Haven't you a working arrangement out there in your district with the London Guaranty & Accident Co.?

Mr. Pfirshing: I object to that.

Q. Well, are not your bills paid by that Company?

Mr. Pfirshing: I object to that your Honor.

Mr. Gallagher: We have a right to know the facts in this case. * * * He has already stated that they paid his bills.

The Court: It will be stricken out.

Mr. Gallagher: Exception. I believe, your Honor, that it is bound to develop a little later in this case just who is conducting the defense here."

Immediately when the objectionable and irrelevant matter was objected to, it will be observed, counsel for plaintiff, by innuendo and direct implication, undertook to himself assert the matter to be a truth. He quickly resolved that if he could not get the information before the jury from the witness he would bring it home to the jury by his own assertion, at least.

He sought to and did forestall the court. He referred to it as *a fact*. When the only question was whether it was proper to inform the jury as to the truth of the matter he anticipated the ruling of the court and said: "We have a right to know *the facts* in this case" and added what, so far as the abstract shows, seems to us an unfounded remark: "He (the doctor) has already stated that they (the Insurance Company) paid his bills." Such a remark might well mislead some of the jurors. Not content with all this counsel, after an adverse ruling by the court, does not submit, but, in open defiance of the ruling of the court, makes an entirely uncalled for and unnecessary remark and thereby emphasizes his innuendo. Upon the ruling of the court he remarks: "I believe, your Honor, that it is bound to develop a little later in this case just who is conducting the defense here."

Many cases have been reversed for just such offense by counsel. Counsel must be presumed to know the law of evidence of his own state. The misfortune to his client of reversal is entirely counsel's own fault, as it was in the numerous like cases to which we shall refer. After the remarks of counsel the continuance of the trial was a mere speculation. Had there been a verdict for the defendant it would have been, so far as this proposition is concerned, the duty of the trial judge to permit the verdict to stand. Being for the plaintiff, as it was, the duty of the trial judge was to set the verdict aside and grant a new trial.

In Eckhart & Swan Milling Company v. Schaefer, 101 Ill. App. 500, Mr. Justice Adams delivering the opinion of the court said: "If it were a fact that the Fidelity & Casualty Company was defending the suit, it would not be competent to prove that fact, for the plain reason that such proof would not tend, in any degree, to sustain the issues; it would be totally irrelevant. It is, therefore, plain that the attorneys, presumably learned in the law, could not have made the statements in question for any legitimate purpose, and while we will not say that they were made for an illegitimate purpose, and to prejudice the jury, we are of opinion that they were well calculated to have that effect." The judgment for plaintiff was reversed. What was said in that case is in harmony with our views, with the reservation, however, that it is not here necessary to pass upon the question whether upon an examination of veniremen it is competent to inquire into their acquaintance with persons connected with an insurance company the connection of which with the controversy under consideration cannot legitimately appear in the case.

Fuller Co. v. Darragh, 101 Ill. App. 664, is another case where the question we are considering was discussed. Therein the opinion of the court was delivered by Mr. Justice Waterman. Among other things

he said: "To the proper conduct of jury trials one thing is absolutely essential, viz.: a recognition of the principle that at the bar of justice all men are equal. All causes are to be tried, all questions determined, upon matters pertinent thereto, and not upon considerations which in the controversy ought not to be mentioned. * * * None of the learned counsel for appellee will gravely contend that whether appellant had procured insurance against liability for accidents or whether the suit under consideration was being defended by an insurance company or its attorney could possibly throw any light upon the question whether the injury to appellee had been occasioned by actionable negligence of appellant. Why, then, should the jury be told that the defense was made by a casualty insurance company. * * * Jurors may be asked if they know certain persons or have business or other relations with them, but under the guise of obtaining a fair jury, information calculated to prejudice jurors against either party cannot be given, and the trial court should not only prevent this, but if satisfied that despite its rulings jurors have thus been swerved in the considerations, should set aside verdicts so obtained." The judgment obtained in that case, by the plaintiff, was reversed by this court because his counsel informed the jury that the Fidelity & Casualty Company was defending the case.

Manigold v. Black River Traction Company, 80 N. Y. Supp. 861, is another case in point where the judgment of the trial court was for the like cause reversed. The language used in that case is very pertinent.

In Lone Star Brg. Co. v. Voith, 84 S. W. Rep. 1100, the same doctrine was announced. In that case the court said: "There are a number of assignments of error predicated upon bills of exception which show persistent efforts on the part of appellee's counsel during the trial from beginning to the close of his argument to get before the jury the fact that appellant was insured by some Insurance Company against

loss by reason of appellee's injuries, and to create the impression upon the jury that by reason of such insurance the damages sued for, if recovered, would fall upon the Insurance Company, and not upon the appellant. We are of the opinion that this conduct on the part of plaintiff's counsel was prejudicial to the defendant and constitutes error which requires a reversal of the judgment." The same rule will be found in Iverson v. McDonnell, 78 Pac. Rep. 202; Lipschutz v. Ross, 84 N. Y. Supp 632.

As will be seen from some of the cases cited above, no instruction can cure the error. It is obvious why this should be so. If counsel were permitted to resort to the practice of violating the law of evidence and then curing the violation by merely giving an instruction to the jury to disregard the unwarranted and illegitimate remarks made, the law of evidence would be useless and but a farce. Such instructions, usually, but make more emphatic the evil intended to be cured.

There can be nothing more prejudicial to a defendant in a personal injury case, where the unfortunate plaintiff is present before the jury with an injury more or less serious, than to have the jury told that if it will render a verdict in the case for the unfortunate plaintiff the defendant present, who is apparently making the defense, will not have to pay it but it will be paid by an absent real defendant, a foreign corporation. And counsel need not tell the jurors all that, for a suggestive remark is sufficient. Human nature, even in the jury box, is such that a multitude of instructions cannot cure the harm done.

Counsel for defendant in error contend that because the Accident Insurance Company was the real defendant and, as they assert, in fact, through their own counsel defended the case, therefore it was competent to show bias, on the witness' part, in favor of the Accident Insurance Company. We cannot agree with this contention. True the interest and animus

of a witness in a case may be shown. But it was not necessary, in this case, to refer to the Accident Insurance Company at all, for the purpose of showing interest or animus favorable to the defense on the part of the witness. Primarily, if liability there be, the liability is that of the Lockwood & Strickland Company to the plaintiff, Wiersema. If the interest or animus, sought for by counsel for Wiersema, existed it was in favor of the defendant Lockwood & Strickland Company, although through the Accident Insurance Company. The witness had just replied that he had rendered his bill to the Lockwood & Strickland Company. When counsel asked the witness whether his bills were paid by the Accident Insurance Company he could just as well, so far as the legitimate purpose of his question was concerned, have asked the witness whether he had any ''working arrangement'' with anyone connected with the Lockwood & Strickland Company or any one connected with that company in the defense of the case, and whether any one in any wise connected with the defendant company paid his bills. Ordinarily there would, in such case, be many ways in which the interest or animus of the witness might be ascertained, without counsel mentioning the Accident Insurance Company. The broad way in which counsel proceeded indicates rather a desire on his part to bring before the jury the fact that a foreign insurance company would pay the judgment than a desire to bring out the interest and animus of the witness. Of course, if, in developing competent evidence, it should incidentally, and not *mala fides,* appear that an accident insurance company was concerned that would be another question. But if such fact was brought out by procurement of counsel, by private suggestion to the witness or otherwise, then any verdict obtained for the plaintiff should be set aside. ''Emulation and zeal lead lawyers astray; but the general law of the profession is duty, not success,'' said the able and eminent Edward G. Ryan.

At the twenty-first annual meeting of the American Bar Association held August 31, 1908, the following among other canons of professional ethics was adopted: "23  *  *  *  A lawyer should not offer evidence, which he knows the court should reject, in order to get the same before the jury by argument for its admissibility.  *  *  *  Neither should he introduce into an argument, addressed to the court, remarks or statements intended to influence the jury or bystanders."

Counsel for defendant in error refer to C. C. Ry. Co. v. Carroll, 206 Ill 318; Wrisley Co. v. Burke, 203 Ill. 250; and C. & E. I. Ry. Co. v. Schmitz, 211 Ill. 446, as sustaining their contention here.  We do not so understand those cases.  The question here involved was not before the court in any of those cases. In the Carroll case the railway company offered no evidence, except evidence going to the extent of the injuries, and on appeal the company contended that there was nothing in the record showing that it owned, operated or controlled the car line upon which Carroll was a passenger when injured.  In the evidence it appeared that a doctor Babcock, a doctor Moyer and a doctor Leaming, who all testified for the railway company, stated that they had been paid by the railway company for examining Carroll, and this, with other evidence, was considered by the court as bearing on the question of ownership or control.  The court said:  "It is urged it was error, on cross-examination, to ask the doctors introduced by appellant by whom they were sent and paid.  We do not think so.  It is always competent, on cross-examination, to ask a witness if he is in the employ of a party, or if at the time he rendered the particular service he was in the employ of such party for the purpose of showing his relation to the case and his interest in it, as affecting his credibility and weight of his evidence." What we have already said herein is not inconsistent with what our Supreme Court there said.  The fact that in the examination of a witness care is required

in order not to bring out what is illegitimate while developing what is legitimate will not prevent a setting aside of the verdict or a reversal where counsel has failed to exercise the required care and therefore brought out the illegitimate evidence. In the Schmitz case the railroad company in cross-examining a doctor sought to bring out the fact that as a medical man he was interested in a great number of personal injury suits against corporations. This line of cross-examination the trial court excluded and the Supreme Court held it was rightfully excluded, and the Carroll case was referred to as not being inconsistent with the ruling the court then made. That is all in that case. In the Wrisley case the court simply held that the fact that the physician who testified had been engaged and paid by the defendant company was proper testimony. We fail to find anything in that case inconsistent with our views expressed herein. So in none of the three cases cited by defendant in error do we find anything inconsistent with our holding here.

We also find error in that the trial court in instructing the jury upon the subject of assumed risks told the jury that the servant assumed only the usual and ordinary risks incident to the employment and did not in the same connection instruct the jury that a servant also assumed such risks as are obvious and apparent in the particular service, according to McCormick Harvester Co. v. Zakzewski, 220 Ill. 522, 530.

For the errors aforesaid the case is reversed and remanded.

*Reversed and remanded.*